J-S43018-18

2019 PA Super 54

COMMONWEALTH OF PENNSYLVANIA,   :   IN THE SUPERIOR COURT OF
                :      PENNSYLVANIA
     Appellant       :
                :
      v.          :
                :
BLAINE ELLIOT COLEMAN,     :
                :
     Appellee       :   No. 1789 WDA 2017

Appeal from the Order November 14, 2017
In the Court of Common Pleas of Mercer County
Criminal Division at No.: CP-43-CR-0000621-2017

BEFORE: STABILE, J., DUBOW, J., and NICHOLS, J.

OPINION BY DUBOW, J.:         **FILED FEBRUARY 22, 2019**

The Commonwealth appeals from the November 14, 2017 Order entered in the Mercer County Court of Common Pleas granting the Motion to Suppress filed by Appellee, Blaine Elliot Coleman. After careful review, we conclude that the court erred as a matter of law and, thus, reverse.

We glean the underlying facts from the suppression court's November 14, 2017 Opinion, and our review of the evidence presented at the suppression hearing. Briefly, on March 30, 2017, Farrell Police Department Detective Sergeant Charles Rubano and his partner Officer Michael Murphy were investigating a recent arson that had killed a woman. Suspecting Appellee's involvement, they went to Appellee's mother's home in Farrell, Pennsylvania. They were armed and in plainclothes. After identifying themselves and asking Appellee if he could talk, Appellee allowed the officers to come into the home.

Inside, the officers told Appellee they wanted to speak with him at the nearby police station, which was about 150 yards away. Appellee responded that he would come down to the police station later when he could get a ride because it was raining at the time. When the officers offered Appellee a ride, Appellee agreed and grabbed his insulin kit.

Appellee entered the back seat of the officers' unmarked car. The officers did not frisk, handcuff, or restrain Appellee, and the car did not have a cage inside. Detective Sergeant Rubano and Officer Murphy drove Appellee to the police station.

After the two-minute drive, they arrived at the Farrell Police Station, which also contains a regional lockup facility, and entered the garage through a sally port. The three walked inside the building, past jail cells, and into an interview room. The officers did not restrain Appellee and permitted him to keep and use his overcoat, his hat, and his insulin kit, which contained syringes and insulin. The officers informed Appellee he was free to leave at any time.

The officers activated an audio/video recording system[1] and read Appellee *Miranda*[2] warnings. Appellee read the *Miranda* warnings but declined the officers' request to sign the waiver form. Detective Sergeant

---

[1] The Commonwealth offered into evidence, and the trial court admitted without objection, the 24-minute recording.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Rubano then informed Appellee that he wanted to ask questions about the arson. After about one minute, Appellee explained that he did not have anything to say about the arson. Appellee explicitly, clearly, and unequivocally said he did not want to talk to the police. *See* Trial Court Opinion, 11/14/17, at 9, *citing* Commonwealth Exhibit 1 (video recording of interview).

Detective Sergeant Rubano and Officer Murphy ignored Appellee's statement and continued speaking to Appellee.[3] They explained to Appellee that he was not in custody and he was free to leave at any time. The officers then advised Appellee that he was a suspect, along with an individual named Brandon Gilchrest. N.T., 10/4/17, at 5-6; Trial Court Opinion, 11/14/17, at 4.

The officers told Appellee that they wanted to show him some things "to see if it change[d] [his] mind." N.T., 10/4/17, at 25 (quoting Commonwealth Exhibit 1 (video recording of interview)). They showed Appellee blown-up pictures of the crime scene and the victim's body. They told Appellee details about evidence and information they had obtained about the arson and who was involved. They showed Appellee video from a gas station showing

_____

[3] In its Opinion, the trial court stated that, based on their reactions clearly visible on the video recording, the officers "obviously understood that [Appellee] was exercising his right to remain silent when they hesitated before they decided to tell [Appellee] in effect that they would not ask him any questions, but that they just wanted to show him what they had." Trial Court Opinion, 11/14/17, at 9.

Appellee present in a vehicle where Appellee and his co-conspirators allegedly obtained gasoline for the arson. The officers also told Appellee disturbing details about the burnt corpse and emphasized that the victim's children did not have a mother. **See** N.T., 10/4/17, at 24-25, 34; Trial Court Opinion, 11/14/17, at 4.

Appellee initially denied his involvement after the officers explained their version of the crime based on the evidence they had at the time. The officers showed Appellee a photograph of Gilchrest at the gas station and explained that, based on what they had heard, the officers believed Appellee had started the fire. The officers told Appellee, "you know who did this, and whoever comes in first, that is how the story will be told." Trial Court Opinion, 11/14/17, at 5 (quoting Commonwealth Exhibit 1 (video recording of interview)).

Appellee eventually "started to reveal names and information about a vehicle and who the owner of the vehicle was and where that individual lived, and eventually told the police that he pointed out the house that he thought the alleged target lived in, and that Brandon Gilchrest lit the place up." **Id.** (describing Commonwealth Exhibit 1 (video recording of interview)).

The officers gave Appellee some paper in case he wanted to make a statement and then left the room for three minutes. While the officers were not in the room, Appellee used his insulin kit and did not provide a written

- 4 -

statement. Immediately after returning to the room, the officers arrested Appellee.

The Commonwealth charged Appellee with Second-Degree Murder, Aggravated Arson,[4] and related offenses.

Appellee filed a Motion to Suppress his statements to police. On October 4, 2017, the court held a hearing on the Motion to Suppress at which Detective Sergeant Rubano testified consistent with the above facts.[5] **See** N.T., 10/4/17, at 4-40.

On November 14, 2017, the court filed an Opinion and Order, with formal findings of fact and conclusions of law, granting Appellee's Motion to Suppress. The court concluded that Appellee "clearly and unequivocally invoked his right to remain silent after he was given his **Miranda** warnings at the Farrell Police Station." Trial Court Opinion, 11/14/17, at 7. The court observed that the officers ignored Appellee's invocation of his right to remain silent in order to elicit incriminating statements. **Id.** at 7. Significantly, the court also explicitly concluded that Appellee "was not subjected to custodial interrogation." **Id.** at 8.

---

[4] 18 Pa.C.S. § 2502(b) and 18 Pa.C.S. § 3301(a.1)(2), respectively.

[5] Detective Sergeant Rubano was the only witness to testify at the suppression hearing.

On December 1, 2017, the Commonwealth filed an interlocutory appeal pursuant to Pa.R.A.P. 311(d).[6] Both the Commonwealth and the court complied with Pa.R.A.P. 1925.

The Commonwealth presents three issues for our review:

1. Whether Appellee's right to remain silent was violated even though he was not in custody or detained?

2. Whether a defendant's rights under **Miranda** and its progeny automatically execute upon **Miranda** warnings being read by police officers, regardless of what the defendant's status of custody was at the time of questioning?

3. Whether Appellee's Fifth Amendment rights self-execute despite Appellee not being in custody or detention?

Commonwealth's Brief at 4.

Our standard of review applicable to suppression determinations is well settled. "When reviewing the grant of a suppression motion, we must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Ennels**, 167 A.3d 716, 718 (Pa. Super. 2017) (citation and quotation marks omitted). "We may only consider evidence presented at the suppression hearing." **Id.**

_____

[6] Pa.R.A.P. 311(d) provides that "the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."

"In addition, because the defendant prevailed on this issue before the suppression court, we consider only the defendant's evidence and so much of the Commonwealth's evidence as remains uncontradicted when read in the context of the record as a whole." *Id.* at 718-19 (citation omitted). "We may reverse only if the legal conclusions drawn from the facts are in error." *Id.* at 719.

Importantly, "[o]nce a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." ***Commonwealth v. Wallace***, 42 A.3d 1040, 1047-1048 (Pa. Super. 2012) (*en banc*) (citation omitted); ***see also*** Pa.R.Crim.P. 581(H).

The Fifth Amendment provides "no person ... shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. "This prohibition not only permits an individual to refuse to testify against himself when he is a defendant but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." ***Commonwealth v. Cooley***, 118 A.3d 370, 375 (Pa. 2015) (citations and quotation marks omitted).

"The United States Supreme Court has held that, before law enforcement officers question an individual who has been [] taken into custody or has been deprived of his freedom in any significant way, the officers must

first warn the individual that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed." *Commonwealth v. Yandamuri*, 159 A.3d 503, 519-20 (Pa. 2017) (citing *Miranda*, 384 U.S. at 478–79).

"However, these special procedural safeguards are required only where a suspect is both taken into custody and subjected to interrogation." *Id.* at 520 (citations omitted). *See also Commonwealth v. Witmayer*, 144 A.3d 939, 948 (Pa. Super. 2016) ("Our law is well settled that an individual is entitled to *Miranda* warnings only when he is subject to a custodial interrogation."). "Statements not made in response to custodial interrogation are classified as gratuitous and not subject to suppression for lack of *Miranda* warnings." *Yandamuri*, 159 A.3d at 520 (citation omitted).

The procedural safeguards of *Miranda* do not apply to police interactions less intrusive than custodial detentions, such as investigatory detentions and mere encounters. *Commonwealth v. Smith*, 172 A.3d 26, 31-32, 34 n.6 (Pa. Super. 2017). Importantly, administering *Miranda* warnings does not automatically transform non-custodial questioning of a defendant into an arrest or custodial detention. *Yandamuri*, 159 A.3d at 522.

In its first issue, the Commonwealth asserts the trial court erred as a matter of law in concluding that the officers violated Appellee's right to remain silent because, as the court noted, Appellee was not in a custodial

interrogation based on the totality of circumstances. *See* Commonwealth's Brief at 11-17, 21.

Assuming Appellee was not in a custodial interrogation under the applicable standards governing *Miranda*, the procedural safeguards of *Miranda* were not yet in force. *See Smith*, 172 A.3d at 31-32, 34 n.6 (distinguishing custodial detention from other less intrusive levels of police interactions where *Miranda* does not apply, such as investigative detentions and mere encounters).

The record amply supports the court's factual finding that Appellee was not in custody for *Miranda* purposes. Appellee voluntarily accompanied the officers to the police station and kept his insulin kit the entire time. The officers did not show, use, or threaten to use force. They did not transfer Appellee against his will. They did not frisk or restrain Appellee. They were armed, but dressed in plainclothes and drove an unmarked car. Finally, they reminded Appellee that he was not under arrest and that he was free to leave at any time.

Because he was essentially free to leave, chose not to leave, and continued to listen and then speak with the officers, notwithstanding his initial silence and invocation of his right to remain silent, Appellee's statements were "gratuitous" under *Yandamuri*. Appellee was free to remain silent the entire time, but he voluntarily decided to change his mind at some point during the interaction with the officers. Although the officers provided *Miranda*

warnings, this did not automatically trigger **Miranda** protections or transform the interaction into a custodial detention or an arrest. **Yandamuri**, 159 A.3d. at 522.[7,8]

Based on the foregoing, we conclude that the court erred as a matter of law in suppressing Appellee's March 30, 2017 pre-arrest statements to police.[9]

Order reversed. Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

---

[7] This factor would be relevant under the totality of circumstances inquiry about whether police have subjected a defendant to a custodial interrogation. However, this factor is not significant to our analysis here since the parties have not challenged the court's finding that this was not a custodial interrogation.

[8] Seeming to recognize certain deficiencies in its analysis and the absence of case law directly supporting its conclusions, the court attempted to rest its findings on a freestanding pre-arrest right to remain silent apart from **Miranda**. **See** Trial Court Opinion, 2/21/18, at 4 (citing, *inter alia*, **Commonwealth v. Cooley**, 118 A.3d 370, 375 (Pa. 2015)). We have reviewed the cited cases and conclude that they are either distinguishable or not relevant because they involve custodial interrogations or address other incomparable circumstances, such as commenting on pre-arrest silence.

[9] In light of our resolution, we will not address the Commonwealth's remaining issues.

Date: 2/22/2019