J-S19020-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
             :     PENNSYLVANIA
             :
      v.         :
             :
             :
ANDREW ANTHONY G. MILLER   :
             :
     Appellant     :   No. 1128 WDA 2020

Appeal from the Judgment of Sentence Entered September 15, 2020
In the Court of Common Pleas of Venango County
Criminal Division at No:  CP-61-CR-0000647-2018

BEFORE:  DUBOW, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:       **FILED: September 7, 2021**

Andrew Anthony G. Miller (Appellant) appeals from the judgment of sentence imposed after a jury found him guilty of attempted rape of a child, attempted involuntary deviate sexual intercourse with a child (IDSI), attempted indecent assault of a child — victim less than 13 years of age, attempted aggravated indecent assault of a child, attempted statutory sexual assault, and attempted sexual assault.[1]  Upon careful review, we affirm in part, reverse in part, and remand for resentencing.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 901(a), 3121(c), 3123(b), 3126(a)(7), 3125(b), 3122.1(a)(1), 3124.1.

- 1 -

At the outset, we clarify that at this writing, Appellant is 24 years old, but was 15 years old in August 2012 when he committed the above crimes, and 21 years old when he was charged as an adult.[2] Appellant does not raise any issue related to his age. *See Commonwealth v. Monaco*, 869 A.2d 1026, 1029 (Pa. Super. 2005) (trial court did not err in trying appellant, who was twenty-two years old at the time of his arrest, as an adult for sexual assaults he committed as a juvenile; appellant did not qualify as a "child" under the Juvenile Act at the time of his arrest and no longer "fell within the ambit of the juvenile justice system.").

The trial court detailed the factual and procedural history, stating:

> On December 29, 2017, Oil City Police Officer Robert Culp [(Officer Culp)] interviewed the victim, a minor. In that interview, the victim told Officer Culp that several times over a period of three months during 2012, [Appellant] forced the victim into positions of submission in several locations in the house [in which Appellant and the victim resided together at the time] and proceeded to: attempt to touch the victim's genitals, attempt to force contact with [Appellant's] genitals, and attempt to penetrate the victim with his genitals. On April 15, 2018, [Appellant] appeared at the Oil City Police Department for an interview, conducted by Officer Culp. During the interview, [Appellant] admitted to having sexual contact with the victim in 2012, but indicated that he believed such contact to be consensual. At the time of the incidents, [Appellant] was 15 years of age, and the victim was [] 10-year[s]-old.
>
> On November 19, 2018, [Appellant] filed [an] Omnibus Pre-Trial Motion (OPTM), seeking suppression of the statements that

---

[2] *Accord Commonwealth v. Zeno*, 232 A.3d 869, 870-71 (Pa. Super. 2020) (defendant charged as adult with various sexual offenses committed when he was 14 and 16 years old).

[Appellant] made during the April 15, 2018 interview with Officer Culp. [Appellant] argued that he was subjected to custodial interrogation, that he was not *Mirandized*,[3] and that any waiver of his *Miranda* rights was not knowing, intelligent, or voluntary. In support of his argument, [Appellant] contended that the interview was conducted in a locked room inside a police station, that he is autistic, and that he did not feel free to leave.

Prior to the OPTM hearing, Steven Reilly [(Mr. Reilly)], a licensed psychologist, evaluated [Appellant] and prepared a report regarding [Appellant's] mental condition and his capacity to waive his *Miranda* rights. Mr. Reilly's report reflected statements made to Mr. Reilly by [Appellant] and his family that [Appellant] had been previously diagnosed with autism and bipolar disorder. Mr. Reilly first evaluated [Appellant] after the commencement of [Appellant's] prosecution and was not counseling [Appellant] prior to this matter.

On May 24, 2019, the [trial] court conducted a hearing on [Appellant's] OPTM. At the hearing, the court began by taking testimony and argument as to whether [Appellant] was subjected to custodial interrogation. The Commonwealth's witness, Officer Culp, testified that he made contact with [Appellant's] mother prior to the interview and that he told her that he wanted to speak to [Appellant] regarding the accusations against him, and that [Appellant] was not required to come to the station for an interview. Officer Culp testified that he did not recall either way whether he advised [Appellant's] mother that [Appellant] would be entitled to have a lawyer present. Officer Culp testified that he advised [Appellant's] parents and [Appellant] that he would be free to leave. Officer Culp testified that the room was unlocked during the interview, and that the door to the interview room was left open when Officer Culp left during the interview to retrieve [Appellant's] father. Officer Culp testified that the conversation remained congenial and that neither he nor [Appellant] raised

_____

[3] *See Miranda v. Arizona*, 384 U.S. 436 (1966); *see also Commonwealth v. Yandamuri*, 159 A.3d 503, 519-20 (Pa. 2017) ("The [*Miranda*] Court [] held that, before law enforcement officers question an individual who has been [] taken into custody or has been deprived of his freedom in any significant way, the officers must first warn the individual that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed.").

their voices during the interview, which lasted approximately 40 minutes. During the interview, Officer Culp had to leave to address a call, at which time he led [Appellant] and [Appellant's] father into the lobby of the police station, asked that they remain, and left them in the lobby unrestrained. [Appellant] and his father remained in the lobby until Officer Culp's return. Officer Culp testified that, as shown in the video of the interview, he described to [Appellant] that the interview room was a "confessional" and that [Appellant] could get things off his chest and that what [Appellant] said would remain in the room. Officer Culp testified that he informed both [Appellant] and [Appellant's] father that a video recording of the interview would be sent to the District Attorney.

At the conclusion of the hearing, the court denied [Appellant's] OPTM, finding—under the totality of the circumstances—that he was not subject to custodial interrogation, that a **_Miranda_** warning was unnecessary, and that [Appellant's] statements were voluntary. As such, because it was not necessary to **_Mirandize_** [Appellant], the issue to which [Mr.] Reilly[–]the defense expert—would have testified was not material, and his testimony was excluded.

## [] **Trial**

[Appellant] was tried by jury on February 11 and 13 of 2020. On the first day of trial, prior to the commencement of the trial, the court received further argument and engaged in discussion with defense counsel and counsel for the Commonwealth regarding the proper scope of testimony [from Louis Martone, M.D. (Dr. Martone), a defense expert in the field of psychology]. At that time, defense counsel indicated that Dr. Martone's testimony would not relate to [Appellant's] lack of understanding, a defense of mental infirmity, or an issue relating to mental disease or defect bearing on the issue of guilt, as would have necessitated a notice pursuant to Pa.R.Crim.P. 568(A).[4]

---

[4] Rule 568(A) provides in relevant part:

[A] defendant who intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing [] on the issue of guilt . . . shall file with the clerk of courts . . . a notice of the intention to offer this expert evidence,

- 4 -

[Appellant] did not file such a notice. Defense counsel relayed that Dr. Martone's testimony would be that [Appellant] has autism, along with an explanation of what autism is and how it can account for a flat affect and unusual mannerisms or responses. The Commonwealth objected, as Dr. Martone's report contained conclusions regarding [Appellant's] mental infirmity, but no discussion of the effect that autism has with regard to a person's mannerisms, responses, or affect. The court permitted Dr. Martone's testimony as to [Appellant's] autism and the impact that it has on his demeanor and manner, but advised counsel that testimony as to mental infirmity or diminished capacity would be improper, given the court's prior determination at the OPTM hearing and the absence of a Rule 568 notice.

The evidence presented at trial included the testimony of the victim. The victim testified [to being] ten years old at the time of the incidents, five to seven inches shorter than [Appellant] was at the time, and lighter. The victim testified that [Appellant] initiated inappropriate contact [] shortly after [Appellant] came to live in the victim's home by [touching the victim's] back and legs during one evening, while the victim was trying to sleep. The victim testified in detail about another, more violent encounter that happened on a subsequent night. During that second encounter, the victim testified that [Appellant] followed the victim into the bathroom and watched the victim urinate while touching his own genitals. When the victim left the bathroom, he testified that [Appellant] followed [], then attacked [], dragging [the victim] to the floor and initiating an altercation that lasted for 20 to 25 minutes. During that altercation, [Appellant] and the victim fought and at some point [Appellant] exposed his erect penis and attempted to forcibly remove the victim's shorts. While [Appellant] had the victim on the ground near a couch, which [Appellant] used for leverage, [Appellant] attempted unsuccessfully to force his penis into the victim's mouth and anus, making contact with the victim but not successfully penetrating the victim. The victim testified that [to feeling Appellant's] erect penis on [the victim's] buttocks. The victim testified that there were other incidents involving touching by [Appellant], but that the incident described above was the most severe.

---

and shall serve a copy of the notice and a certificate of service on the attorney for the Commonwealth.

Pa.R.Crim.P. 568(A)(2).

Officer Culp also testified regarding his interview with [Appellant], during which [Appellant] stated that he had engaged in sexual contact with the victim, but that [Appellant] believed that it was consensual in nature and that the contact did not involve penetration or contact with either party's genitals.

[D.H.], the victim's father, testified on the second day of the trial. On direct examination by the Commonwealth, [D.H.] testified regarding the custody arrangement involving the victim and his other children, in response to a question as to whether he would fabricate or had fabricated allegations of sexual assault in order to obtain leverage in a custody dispute. [D.H.] testified in the negative and [stated] that his custody arrangement has remained unchanged. [D.H.] testified that he did not bear animosity [] such that he would fabricate allegations [for] spite []. On cross examination, defense counsel sought to question [D.H.] regarding his custody matter to demonstrate the level of acrimony between the parties and allegations of abuse or violence on [D.H.'s] part by employing a copy of the certified docket in the relevant custody matter.

During a protracted argument outside of the presence of the jury and [D.H.], defense counsel set forth their intention to use a different allegation of abuse involving a different child of [D.H.'s] and a different perpetrator, who has a different mother, which was later determined to be unfounded, in order to gain leverage in that custody matter. Defense counsel also intended to use the docket timeline, showing a custody modification th[at] corresponded relatively close in time to the time that allegations were made in this case. After review of the docket and certain documents in the custody matter and a related matter, the court observed that none of these impacted the credibility of the victim making the allegations. The court concluded that this would serve to confuse the jury, would amount to a mini-trial on the issue, and would not have bearing on the credibility of complaining witness. Additionally, because the petition itself had nothing to do with this case and would require further inquiry into CYS records and proceedings[, t]he court found that this was an ancillary matter that does not demonstrate that [D.H.] has testified falsely regarding his custody matter. The court also found that this would open the door to CYS matters previously excluded by the agreement of defense counsel and counsel for the Commonwealth. The court made clear that defense counsel could examine [D.H.] regarding the custody matter and mark the

certified docket as an exhibit and that it would be admitted, but could not introduce the filings or reference in detail the substance thereof.

Defense counsel proceeded to question [D.H.] regarding the type of filings and the time that they were filed in [D.H.'s] custody matter, as well as whether [D.H.] was the person filing the same. [D.H.] also testified that the custody matter as explored by defense counsel was not connected in any way to this matter.

Trial Court Opinion, 12/22/20, at 2-7 (footnotes 2 & 3 added; footnotes in original omitted).

At the close of trial, the jury convicted Appellant of the aforementioned crimes. The trial court sentenced Appellant on September 11, 2020 to an aggregate term of 4 to 20 years' imprisonment.

On September 15, 2020, the trial court filed a notice detailing Appellant's obligation to register as a sexual offender for his lifetime under the Sexual Offender Registration and Notification Act (SORNA). *See* 42 Pa.C.S.A. §§ 9799.10 *et seq*. The court found Appellant did not meet the requirements for classification as a sexually violent predator.

Appellant timely filed a post-sentence motion, asserting that none of his convictions were supported by sufficient evidence, and the trial court should have suppressed Appellant's statements to Officer Culp during the police interview. The court denied Appellant's post-sentence motion on October 22, 2020. Appellant timely appealed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents five questions for our review:

DID THE TRIAL COURT ERR WHEN IT FAILED TO SUPPRESS STATEMENTS MADE BY [APPELLANT] TO THE OIL CITY POLICE ON APRIL 15, 2018 WHEN [APPELLANT] WAS NOT **MIRANDIZED**?

DID THE TRIAL COURT ERR IN FAILING TO ALLOW THE DEFENSE WITNESSES, MR REILLY AND DR MARTONE, TO TESTIFY REGARDING [APPELLANT'S] MENTAL STATE AND MENTAL DISABILITIES AT THE SUPPRESSION HEARING TO PROVE THE TOTALITY OF THE CIRCUMSTANCES AT [APPELLANT'S] INTERROGATION?

DID THE TRIAL COURT ERR IN FAILING TO ALLOW DR. MARTONE TO TESTIFY REGARDING [APPELLANT'S] MENTAL STATE AND MENTAL ABILITIES AT [T]HE JURY TRIAL TO HELP THE JURY DETERINE THE TOTALITY OF THE CIRCUMSTANCES WHEN [APPELLANT] WAS QUESTIONED BY THE POLICE?

DID THE TRIAL COURT ERR IN FAILING TO ALLOW TESTIMONY REGARDING [D.H.'S] *PRO SE* MOTION FOR PARTIAL CUSTODY WHEN IT WOULD HAVE PROVIDED EVIDENCE OF THE VICTIM'S MOTIVE TO FABRICATE?

WAS THE EVIDENCE INSUFFICIENT IN THIS CASE TO CONVICT [APPELLANT] OF ATTEMPED OR ACTUAL RAPE OF A CHILD, ATTEMPTED OR ACTUAL INVOLUNTARY DEVIATE SEXUAL INTERCOURSE, ATTEMPTED OR ACTUAL AGGRAVATED INDECENT ASSAULT, ATTEMPTED OR ACTUAL STATUTORY SEXUAL ASSAULT, ATTEMPTED OR ACTUAL SEXUAL ASSAULT AND ATTEMPTED OR ACTUAL INDECENT ASSAULT WHEN THE ACTS TESTIFIED TO DID NOT CONSTITUTE A SUBSTANTIAL STEP TOWARD THE COMMISSION OF THOSE CRIMES OR ANY ATTEMPT TO DO SO?

Appellant's Brief at 2-3.

Appellant first argues the trial court erred in denying his OPTM and failing to suppress his statements to Officer Culp because Appellant was subject to a custodial police interrogation. **See id.** at 11-13.

Our standard of review for challenges to the denial of a suppression motion,

- 8 -

is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Yandamuri*, 159 A.3d at 516 (citations omitted). Additionally, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Byrd*, 185 A.3d 1015, 1019 (Pa. Super. 2018) (citation omitted).

*Miranda* warnings must be provided to a defendant only if he or she is subjected to a **custodial** interrogation. *Commonwealth v. Coleman*, 204 A.3d 1003, 1007-08 (Pa. Super. 2019). We have explained:

The standard for determining whether an encounter with the police is deemed "custodial" . . . is an **objective** one based on a **totality of the circumstances**, with due consideration given to the reasonable impression conveyed to the person interrogated. Custodial interrogation has been defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way. "Interrogation" is police conduct calculated to, expected to, or likely to evoke admission. When a person's inculpatory statement is not made in response to custodial interrogation, the statement is classified as gratuitous, and is not subject to suppression for lack of warnings.

The appropriate test for determining whether a situation involves custodial interrogation is as follows:

> The test for determining whether a suspect is being subjected to custodial interrogation, so as to necessitate **Miranda** warnings, is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation.
>
> Said another way, police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the **functional equivalent of arrest**.
>
> The factors a court utilizes to determine, under the totality of the circumstances, whether a detention has become so coercive as to constitute the functional equivalent of arrest include: **the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions**. The fact that a police investigation has focused on a particular individual does not automatically trigger "custody," thus requiring **Miranda** warnings.

**Commonwealth v. Baker**, 24 A.3d 1006, 1019-20 (Pa. Super. 2011) (emphasis added; citations, brackets, and quotation marks omitted); **see also Commonwealth v. Peters**, 642 A.2d 1126, 1130 (Pa. Super. 1994) (*en banc*) (that defendant was the focus of the investigation is relevant but does not *per se* require **Miranda** warnings).

Here, Appellant argues that under the totality of the circumstances, he was in custody when he spoke with Officer Culp. Appellant emphasizes:

> [T]he interview was in the police station — [Appellant's] father was with him, suggesting that he would have been unable to attend the interview alon[e], and [Appellant] is autistic. While the [trial c]ourt states that a "reasonable man" would not have believed that he was in custody, it is arguable that an individual

- 10 -

with autism is a "reasonable man" for these purposes, especially when a parental figure is bringing the individual to the police station, thus implying to their child that this is not necessarily an optional visit.

Appellant's Brief at 12-13. Appellant also references Officer Culp's admission that he was seeking to elicit an incriminating statement from Appellant during the interview. *Id.* at 13.

In finding otherwise, the trial court reasoned:

[Appellant] was not detained, but voluntarily appeared at the Oil City Police Department for an interview in response to a request made by Officer Culp to [Appellant's] mother. Officer Culp testified at the suppression hearing that he advised [Appellant's] mother of the reason for the request, and [Appellant] would be free to leave. The duration of the interview was approximately 40 minutes and [it] was not continuous; there was a break while Officer Culp left to address another matter, during which time [Appellant] and his father waited in the lobby. The door to the interview room was unlocked and left open at times. [Appellant] was not transported anywhere by law enforcement, he was not restrained at any point, nor was there any display or threat of force. The interaction took the form of a conversation, described as congenial, and [Appellant's] father was present for part of the interview.

While the location of the interview—a police station—weighs in favor of finding that the interaction here was custodial in character, all of the remaining factors weigh against such a finding. [**Appellant**] **was advised that he was not required to appear for the interview and that he would be free to leave.** [Appellant] was **voluntarily** brought by a family member to the station, engaged in a conversation with Officer Culp that was neither heated nor protracted, **he was not restrained in any fashion, and he was not subjected to any display or threat of force**. [Appellant] and his father had the opportunity to leave while sitting in the lobby, and chose to remain. The reasonable impression conveyed by Officer Culp was not that [Appellant] was under arrest or otherwise compelled to remain at the station. Indeed, **Officer Culp advised [Appellant] that he would be free to leave, and that [Appellant] would leave the station that day, which he did**. While [Appellant] is

- 11 -

autistic, there was no evidence suggesting, **from an *objective perspective***, that this played any discernible role in coloring the character of the interaction. Under similar circumstances, the Superior Court has found that a reasonable man would not believe himself to be in custody. ***Commonwealth v. Witmayer***, 144 A.3d 939, 949 (Pa. Super. 2016) [(stating: "a]ppellant voluntarily agreed to meet with [a detective] at the police station. The [d]etective informed [a]ppellant he was not under arrest and that he was free to leave at any lime. Appellant was given directions for exiting the station. A casual interview ensued and it was not unduly long. At no point did [a]ppellant exhibit signs of misunderstanding or incapacity. These circumstances sufficiently support the trial court's holding that a reasonable man would not have believed he was in police custody." ***Id.***[;] ***see also Coleman***, 204 A.3d at 1008 [(holding the defendant "was not in custody for ***Miranda*** purposes. Defendant voluntarily accompanied the officers to the police station and kept his insulin kit the entire time. The officers did not show, use, or threaten to use force. They did not transfer defendant against his will. They did not frisk or restrain defendant. They were armed, but dressed in plainclothes and drove an unmarked car. Finally, they reminded defendant that he was not under arrest and that he was free to leave at any time." (defendant's name modified))].

Trial Court Opinion, 12/22/20, at 10-11 (emphasis added; citations modified; footnote moved to body).

The record supports the court's factual findings, and its determination that the interview of Appellant was not a custodial interrogation is supported by applicable law. ***Baker***, ***supra***. Accordingly, the trial court did not abuse its discretion in denying Appellant's OPTM.

Appellant next contends the trial court erred in not allowing expert testimony from Dr. Martone and Mr. Reilly at the suppression hearing concerning Appellant's mental infirmities, which would have helped to "prove the totality of the circumstances" relative to Appellant's interview with Officer Culp. Appellant's Brief at 13. Appellant claims "[t]he experts proffered would

not just speak to the issue of [Appellant's] mental state during the interrogation but his mental state in general in understanding whether he was free to leave and why he was in the situation he was in." *Id.* at 14. Appellant further argues: "The specific psychological state of the individual being interviewed should be considered by the Court in order to determine whether a custodial interrogation was taking place, and thus, whether the defendant should have been *Mirandized*." *Id.* at 15; *see also id.* at 14 (asserting "the issue is whether a custodial interrogation took place **from** [**Appellant's**] **perspective**, which Mr. Reilly and Dr. Martone would have been able to speak to[.]" (emphasis added)).

In reviewing a challenge to the trial court's decision to permit or exclude expert testimony, we look for an abuse of discretion. *Commonwealth v. Smith*, 206 A.3d 551, 560 (Pa. Super. 2019); *see also Commonwealth v. Minich*, 4 A.3d 1063, 1068 (Pa. Super. 2010) ("The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." (citations and quotation marks omitted)). Further, evidence is only admissible where it is relevant, *i.e.*, where it has some probative value with respect to a material fact. Pa.R.E. 402.

The Commonwealth counters that it would have been impossible for Dr. Martone to testify at the May 24, 2019 suppression hearing because Dr.

Martone did not evaluate Appellant until months after the hearing. *See* Commonwealth's Brief at 10 ("Dr. Martone did not speak with Appellant [] until August 23, 2019, making his proposed ability to testify at the suppression hearing impossible."). Our review of the record confirms the Commonwealth's response. Accordingly, we address Appellant's issue only as it concerns Mr. Reilly.

The trial court offered the following rationale for excluding Mr. Reilly's testimony:

> Had [Appellant] been subjected to custodial interrogation, his mental state would bear directly upon any waiver of his ***Miranda*** rights. . . . There was no **objective** evidence introduced that would suggest to the court that a reasonable person would have believed themselves to be in custody. While the court must look to the totality of the circumstances, an inquiry that is naturally broad in scope, **the court is not free to consider subjective factors**; the totality of the circumstances is measured in **objective** terms. The factors set forth in ***Baker***, ***supra*** reflect this—**there is no factor dealing with the subjective understanding** of either the officer or the person subject to questioning. As the question here is not whether [Appellant] waived his rights, but rather whether he was in custody, **inquiry into what impact his autism may have had** with respect to his interaction with Officer Culp **would be improper, as that fact was not material to the custody determination**. ***See J.D.B. v. North Carolina***, 564 U.S. 261, 271 (2011) (observing that the objective nature of the custody analysis is such that officers need not anticipate "the idiosyncrasies of every individual suspect and divine how those particular traits affect each person's subjective state of mind" or consider "contingent psychological factors when deciding when suspects should be advised of their ***Miranda*** rights").
>
> [Appellant] sought to offer expert testimony as to his internal, **subjective mental state** at the time of the interview. As this is not contemplated by the objective custody analysis employed in determining the necessity for ***Miranda*** warnings, the testimony had no bearing on the issue at hand and would have

been immaterial. [Appellant's] argument as to this issue lacks merit.

Trial Court Opinion, 12/22/20, at 12-13 (some capitalization omitted).

The trial court's reasoning is sound and its conclusion is correct under the law. Thus, the court acted within its broad discretion in precluding Mr. Reilly from testifying at the suppression hearing.

In his third issue, Appellant contends "[t]he trial court's failure to allow Dr. Martone to testify [at trial] regarding [Appellant's] mental state and mental deficiencies was erroneous." Appellant's Brief at 15. Appellant further argues:

> [Appellant's] confession . . . was a large part of the Commonwealth's case in chief – and [Appellant's] condition of autism . . . surely was relevant to the jury's consideration of whether or not his confession was valid. The trial court erred in failing to allow [Dr. Martone] to testify in this regard.

*Id.* at 16.

This Court has explained:

> Pennsylvania trial judges enjoy broad discretion regarding the admissibility of potentially misleading and confusing evidence. Relevance is a threshold consideration in determining the admissibility of evidence. A trial court may, however, properly exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Generally, for the purposes of this evidentiary rule, prejudice means an undue tendency to suggest a decision on an improper basis. The erroneous admission of harmful or prejudicial evidence constitutes reversible error.

***Partlow v. Gray***, 165 A.3d 1013, 1016-17 (Pa. Super. 2017) (citations omitted).

- 15 -

We find no merit to Appellant's claim. As stated above, Appellant failed to file a notice to present a mental infirmity defense pursuant to Rule of Criminal Procedure 568, and therefore, the trial court correctly determined no evidence was permitted as to Appellant's mental health diagnosis relating to the issue of guilt. ***See*** Pa.R.Crim.P. 568(B)(1) ("If the defendant fails to file and serve a notice of insanity or mental infirmity defense, . . . the court may exclude entirely any evidence offered by the defendant for the purpose of proving the defense, except testimony by the defendant[.]"); ***see also Commonwealth v. Cuevas***, 832 A.2d 388, 394 (Pa. 2003). Further, the trial court **did permit** Dr. Martone to testify about Appellant's autism diagnosis and explain how autism could account for Appellant's unusual manner and affect. ***See*** N.T., 2/13/20, at 188-89. It was within the purview of the jury to weigh this testimony in assessing Appellant's credibility and mental faculties.

Finally, the trial court reasoned in the alternative:

[E]ven if [Appellant] could demonstrate an abuse of discretion by the court in excluding Dr. Martone's testimony, [Appellant] cannot demonstrate actual prejudice. Assuming that the court had permitted Dr. Martone to testify as to [Appellant's] potentially limited comprehension of the nature or gravity of his interview with Officer Culp, **that would not alter the testimony provided by the victim as to the events forming the basis for this prosecution**; rather, it would, at most act to raise questions as to the value of [Appellant's] admission of misconduct. **The jury could, nonetheless, have relied solely on the uncorroborated testimony of the victim in reaching their conclusion**.

Trial Court Opinion, 12/22/20, at 14-15 (emphasis added; footnotes and some capitalization omitted).[5] Accordingly, the court did not abuse its discretion.

Appellant next assails the trial court's discretion in precluding relevant evidence that the victim's father, D.H., allegedly made an unfounded allegation of sexual abuse concerning one of his other children. *See* Appellant's Brief at 16-17. Appellant claims:

> The prior act of the victim's father to use similar arguments in a custody case is relevant to the defense's attempt to demonstrate to the jury that the allegations in this case could also have been used to give the victim's father an advantage in ongoing custody proceedings. Thus, the trial court erred in failing to allow the information to [be] presented to the jury.

*Id.* at 17.

It is well-settled that the "determination of the scope and limits of cross-examination are within the discretion of the trial court, and we cannot reverse those findings absent a clear abuse of discretion or an error of law." *Commonwealth v. Handfield*, 34 A.3d 187, 210 (Pa. Super. 2011) (citation omitted).

Upon review, we conclude the trial court did not abuse its discretion in limiting the scope of defense counsel's questioning of D.H. about the custody

---

[5] Also, and even if the court's ruling was error, such error was harmless because – as we explain *infra* – the evidence of Appellant's guilt was overwhelming. *See Commonwealth v. Moore*, 937 A.2d 1062, 1073 (Pa. 2007) ("An error may be deemed harmless, *inter alia*, where the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.").

- 17 -

matter, where one of D.H.'s **other children** purportedly alleged abuse by a **different perpetrator**, not Appellant. The court correctly found this unrelated matter would be confusing to the jury. **See** N.T., 2/13/20, at 64, 75, 81; **id.** at 62 (trial court stating to defense counsel, "what you are doing is you're trying to show . . . an ancillary case, that [] is not related to this [case,] . . . and we start to get to doing a trial within a trial"); **see also Frontage, Inc. v. Cty. of Allegheny**, 162 A.2d 1, 5 (Pa. 1960) (trial court may properly limit questioning into matters unrelated to the case on trial where it would confuse the jury). As described above, the court permitted defense counsel to question D.H. about the custody case to some extent and introduce related exhibits. Notably, the matter defense counsel sought to explore had no bearing on the credibility of the victim, and it was thus not probative of the victim's allegation regarding Appellant. The trial court correctly observed that cross-examination in this regard could "potential[ly] . . . lead to matters already excluded by agreement of counsel." Trial Court Opinion, 12/22/20, at 15.

Finally, Appellant contends none of his convictions can stand because the Commonwealth failed to present sufficient evidence for the jury to convict him of the crimes beyond a reasonable doubt. **See** Appellant's Brief at 18-20. Appellant argues:

> The specific testimony by the victim was that when [the victim] left the bathroom, [Appellant] followed [], then attac[k]ed [] and exposed his erect penis and attempted to forcibly remove the victim's shorts. The victim then testified that [Appellant] attempted to force his penis into the victim's mouth and [] anus,

but that [Appellant] did not penetrate [].  [Appellant] argues that this evidence does not support the charges set forth above.

*Id.* at 21.  Appellant contends, "The evidence in this case that was presented by the victim did not prove any sort of sexual intercourse, deviate sexual intercourse, or attempted sexual intercourse."  *Id.* at 20.

We recognize:

When reviewing a sufficiency of the evidence claim, this Court must view the evidence and all reasonable inferences to be drawn from the evidence in the light most favorable to the Commonwealth as verdict winner, and we must determine if the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt.  This Court may not substitute its judgment for that of the factfinder.  If the record contains support for the verdict, it may not be disturbed.

*Commonwealth v. Burns*, 765 A.2d 1144, 1148 (Pa. Super. 2020) (citations omitted).  Moreover, "the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence."  *Commonwealth v. Smith*, 206 A.3d 551, 557 (Pa. Super. 2019) (citation omitted).  Finally, statutory and case law authority provide that **uncorroborated testimony of a sexual assault victim, if believed, alone is sufficient to support a sex offense conviction**.  *See Commonwealth v. Izurieta*, 171 A.3d 803, 807 (Pa. Super. 2017) (emphasis added); *see also* 18 Pa.C.S.A. § 3106 ("The testimony of a complainant need not be corroborated in prosecutions under this chapter.").

The Crimes Code states that "[a] person commits the offense of rape of a child, a felony of the first degree, when the person engages in sexual intercourse with a complainant who is less than 13 years of age."  18 Pa.C.S.A.

§ 3121(c). Concerning the definition of "sexual intercourse," the Crimes Code provides that "[i]n addition to its ordinary meaning, [sexual intercourse] includes intercourse per os or per anus, with some penetration, however slight; emission is not required." 18 Pa.C.S.A. § 3101. Finally, a person commits an attempt when, "with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a); *see also Commonwealth v. Bolden*, 532 A.2d 1172, 1176 (Pa. Super. 1987) ("Although the Crimes Code does not define 'substantial step,' our courts have focused on what measures the actor has already undertaken in pursuance of the crime which indicate his or her resolve toward the commission of that crime." (citations omitted)).

Further, "[a] person commits involuntary deviate sexual intercourse with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S.A. § 3123(b). Deviate sexual intercourse is defined, in relevant part, as "[s]exual intercourse per os or per anus between human beings" or "penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures." 18 Pa.C.S.A. § 3101.

> Regarding indecent assault of a child:
>
> A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces

- 20 -

for the purpose of arousing sexual desire in the person or the complainant, and . . . the complainant is less than 13 years of age.

18 Pa.C.S.A. § 3126(a)(7). For purposes of this offense, "indecent contact" means any "touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." *Id.* § 3101.

The elements of aggravated indecent assault of a child are set forth in 18 Pa.C.S.A. § 3125(b), which provides that a person commits aggravated indecent assault when the victim is less than 13 years of age and the person "engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body, for any purpose other than good faith medical, hygienic, or law enforcement purposes," and any of the following additional circumstances exist:

(1) the person does so without the complainant's consent;

(2) the person does so by forcible compulsion;

(3) the person does so by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;

(4) the complainant is unconscious or the person knows that the complainant is unaware that the penetration is occurring;

(5) the person has substantially impaired the complainant's power to appraise or control his or her conduct by administering or employing, without the knowledge of the complainant, drugs, intoxicants or other means for the purpose of preventing resistance; [or]

(6) the complainant suffers from a mental disability which renders him or her incapable of consent[.]

*Id.*

- 21 -

The elements of statutory sexual assault are, in relevant part: "engag[ing] in sexual intercourse with a complainant to whom the person is not married who is under the age of 16 years and that person is . . . four years older but less than eight years older than the complainant[.]" 18 Pa.C.S.A. § 3122.1(a)(1).

Finally, a person commits sexual assault "when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S.A. § 3124.1.

Appellant challenges the sufficiency of the evidence as to his multiple convictions based on his singular assertion that there was no "evidence of penetration, however slight." *See* Appellant's Brief at 19. Upon review, we find this argument unpersuasive.

Appellant isolated the 10-year-old victim in a bathroom and began fondling his penis while watching the victim urinate. N.T., 2/11/20, at 40-41. Appellant then forcibly pulled the victim, who was much smaller than Appellant, into a nearby room while the victim attempted to kick and evade Appellant. *Id.* at 42-44; *see also id.* at 43, 47 (victim describing encounter as a "fight" that lasted approximately 10-15 minutes). The attack caused the victim to fall onto the floor, face down. *Id.* at 43; *see also id.* at 44 (victim's finger was injured during the altercation). Appellant then, with penis erect, positioned himself on top of the victim and attempted to pull down the victim's shorts. *Id.* at 45. Appellant was only thwarted from assaulting the victim further because the victim kicked at Appellant and struggled to get away. *Id.*

at 44, 47. After the attack, Appellant threatened the victim with violence if the victim reported the incident, stating: "This is gonna stay between us. If you tell anybody, I'm gonna hurt you." *Id.* at 48.

A few days after this assault, the victim was woken by Appellant, who was touching the victim's back and arms. *Id.* at 51. Appellant's shorts were down and his penis was erect. *Id.* at 52-53. The victim, who was face down on his stomach, tried to push Appellant away. *Id.* at 53-54. Appellant then attempted to force his penis into the victim's mouth and anus. *Id.* The victim specifically stated he could feel Appellant rubbing his penis on the victim's buttocks. *Id.* at 54; *see also id.* (victim stating that Appellant did not penetrate him). The victim eventually managed to struggle free from Appellant, retrieve a telephone, and call 911. *Id.* at 55. However, Appellant grabbed the phone out of the victim's hands and threw it across the room. *Id.*

Appellant repeatedly emphasizes he did not penetrate the victim. *See* Appellant's Brief at 19-21. However, all of Appellant's convictions were for inchoate offenses. Appellant's actions, viewed together, constitute a substantial step toward the commission of all offenses. That Appellant was unsuccessful does not matter where the requisite inquiry involves whether he intended to commit the crimes and took substantial steps toward doing so. *See Bolden*, *supra*. Moreover, Appellant's actions in threatening the victim with violence, and throwing the phone across the room when the victim

attempted to call 911, evinced Appellant's consciousness of guilt for his conduct. *See Commonwealth v. Jones*, 658 A.2d 746, 748 (Pa. 1995).

In sum, the evidence was sufficient to support Appellant's convictions. *See*, *e.g.*, *Commonwealth v. Owens*, 462 A.2d 255, 257 (Pa. Super. 1983) (evidence was sufficient to support conviction of attempted rape where defendant forced the 7-year-old victim into a vacant garage, struck her, and removed her clothing but stopped attempt when a passerby entered garage); *Commonwealth v. Bullock*, 393 A.2d 921, 923 (Pa. Super. 1978) (evidence was sufficient to sustain attempted rape conviction where defendant struck the victim, forced the victim to remove her shirt and bra, and further sexual assault was only thwarted by a nearby policeman who saw the altercation).

Though all of Appellant's issues lack merit, our review discloses he is entitled to relief to the extent his sentence requires him to register as a sexual offender for his lifetime under SORNA. It is settled that a reviewing court may *sua sponte* raise a challenge to an illegal sentence. *Commonwealth v. Given*, 244 A.3d 508, 510 (Pa. Super. 2020); *see also Commonwealth v. Melvin*, 172 A.3d 14, 19 (Pa. Super. 2017) (When reviewing the legality of a sentence, our standard of review is *de novo* and scope of review is plenary).

Appellant was 15 years old when he committed these crimes. Part of Appellant's sentence required him to register as a sexual offender for his lifetime. This Court, in *Commonwealth v. Zeno*, 232 A.3d 869 (Pa. Super. filed May 7, 2020), addressed a virtually identical circumstance, stating:

[Zeno] argues that, because he was a juvenile when he committed the offense, requiring him to register under SORNA violated the cruel and unusual punishment and due process clauses of the Pennsylvania and United States Constitutions. The Commonwealth concedes that Zeno is entitled to relief, following this Court's decision in **Commonwealth v. Haines**, 222 A.3d 756, 759 (Pa. Super. 2019). We agree.

In **In re J.B.**, 107 A.3d 1 (Pa. 2014), the Pennsylvania Supreme Court concluded that "SORNA's registration requirements improperly brand all juvenile offenders' reputations with an indelible mark of a dangerous recidivist even though the irrebuttable presumption linking adjudication of specified offenses with a high likelihood of recidivating is not 'universally true[.]'" **Id.** at 19. It concluded "the application of SORNA's current lifetime registration requirements upon adjudication of specified offenses violates juvenile offenders' due process rights by utilizing an irrebuttable presumption." **Id.** at 19-20.

In **Haines**, this Court concluded that the "**J.B.** court's holding should apply with equal weight to juvenile adjudications as well as to defendants convicted as adults for crimes committed as juveniles." 222 A.3d at 759. Therefore, following **Haines**, <u>a person convicted in criminal court for acts committed while a juvenile cannot be required to register under SORNA</u>.

Here, because Zeno was a juvenile at the time he committed the crimes, he cannot be required to register under SORNA. We accordingly remand for the trial court to vacate the part of the sentence requiring Zeno to register as a sex offender.

**Zeno**, 232 A.3d at 872 (underline added; citations modified).

Based on the foregoing, we remand to the trial court to vacate the unlawful portion of Appellant's sentence requiring him to register as a sexual offender. **See id.** We affirm the judgment of sentence in all other respects.

Judgment of sentence affirmed in part and reversed in part. Case remanded for resentencing. Jurisdiction relinquished.

Judge Pellegrini concurs in the result.

Judge Dubow files a concurring dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/07/2021