**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FARUQ ROBINSON | : | |
| | : | |
| Appellant | : | No. 1188 EDA 2022 |

Appeal from the PCRA Order Entered April 7, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004473-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FARUQ ROBINSON | : | |
| | : | |
| Appellant | : | No. 1189 EDA 2022 |

Appeal from the PCRA Order Entered April 7, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004834-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FARUQ ROBINSON | : | |
| | : | |
| Appellant | : | No. 1190 EDA 2022 |

Appeal from the PCRA Order Entered April 7, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004877-2013

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                            :          PENNSYLVANIA
                                            :
        v.                             :
                                            :
                                            :
FARUQ ROBINSON                    :
                                            :
          Appellant              :       No. 1191 EDA 2022

Appeal from the PCRA Order Entered April 7, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004878-2013

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                            :          PENNSYLVANIA
                                            :
        v.                             :
                                            :
                                            :
FARUQ ROBINSON                    :
                                            :
          Appellant              :       No. 1192 EDA 2022

Appeal from the PCRA Order Entered April 7, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004879-
2013

BEFORE:   LAZARUS, J., KUNSELMAN, J., and PELLEGRINI, J.*

MEMORANDUM BY KUNSELMAN, J.:         **FILED DECEMBER 19, 2023**

      In these consolidated matters, Faruq Robinson appeals from the order denying his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S.A. §§ 9541-46. We affirm.

---

* Retired Senior Judge assigned to the Superior Court.

The PCRA court summarized the pertinent facts as follows:

On December 31, 2008, [Robinson's] niece C.B. visited his home to attend a New Years' Eve party. C.B. was 13 or 14 years old. Late in the night after guests had left or gone to sleep, [Robinson] woke C.B. up and told her to go downstairs to the kitchen. [He] then told C.B. to remove her clothes and sit on a chair. [Robinson] proceeded to place his mouth on her vagina. C.B. asked [him] to stop and he did. Before C.B. was able to return upstairs to go to sleep, [Robinson] forced her to drink a cup of liquor.

The following morning, C.B. told her aunt what happened and her aunt "went off." C.B.'s parents then came to pick her up. Her parents notified the police of the incident immediately and C.B gave a statement to the Special Victims Unit (SVU). Months later, C.B. recanted her statement following pressure from her family. Her family told her that "it wasn't fair to take away [her] cousins' dad." Her aunt drove her to SVU and along the way she coached C.B. to tell the police that she lied and "[Robinson] didn't touch [her]". However, as soon as C.B. was alone with the police she informed them that her aunt had brought her there to lie to them about the incident. C.B. reaffirmed that she had told the truth about the sexual assault. Nevertheless, C.B. did not want [Robinson] to be arrested at that time and a few years passed before she came forward fully.

On April 9, 2009, [Robinson] voluntarily took a polygraph test in connection with the assault of C.B. He was not in custody and was free to end the test and leave at any time. Prior to taking the polygraph test, [Robinson] executed oral and written waivers of his **Miranda** rights. Following the polygraph test, [Robinson] decided to "tell the story his own way," and handwrote a confession in which apologized to C.B. and added "I had no reason to be alone with you in the kitchen and I put my tongue on your vagina. I made a fucked up decision and now have to live with it, I am very sorry." Writing out this confession was [Robinson's] idea, but the statement was witnessed and signed by multiple law enforcement officers.

The other four victims in this case are [Robinson's] biological daughters I.B., C.B., and B.B. and his step-daughter A.B. All four of the victim's testified to enduring years of physical abuse at the hands [Robinson]. They testified to being forced to hold stress positions for prolonged periods of time as well as to

receiving beatings two to three times a week. These beatings were severe enough to leave "red, blue, sometimes puffy" welts "in the shape of a belt." This left the victims in so much pain that sometimes they would not be able to sit down at school. B.B. testified that [Robinson] attempted to force her to eat a cockroach in a bowl of cereal. I.B. testified that [Robinson] whipped her in the face with a braided belt so hard that it took the skin off her face but [Robinson] refused to get her medical treatment. [Robinson] regularly beat all the victims with belts, extension cords, broomsticks, bats and other objects. [Robinson] would sometimes force the victims to undress so that he could beat them while they showered. He would then rub down their unclothed bodies with cocoa butter. The abuse was inflicted "like it was a game, like it was fun for him to do." [Robinson] would tell the victims to act happy around others including teachers and DHS workers. [Robinson] would also make the victims wear long sleeves and pants to hide any bruising or cuts caused by the beatings. [Robinson] told the victims that if they ever reported the abuse then they would be taken away from their mother.

[Robinson's] abuse was so severe and extreme that A.B. had to seek hospital treatment on at least three separate occasions: once for a head wound that was caused by [Robinson] throwing her against a radiator, once for two broken fingers suffered when A.B. was hiding under a table to seek refuge and [Robinson] flipped the table on to her, and once for an impaled foot that occurred when A.B. kicked a bathroom pole while being beaten by [Robinson]. Before allowing her to seek medical treatment, [Robinson] demanded that A.B. tell the hospital staff that the injury was caused by an accident.

Despite the years of prolonged abuse, [Robinson's] daughters testified at trial that "I love him and I don't want him to go to jail," and "I love him. That's my dad. I forgive him for everything." When [Robinson] asked his daughters to write character letters for him, they did but they admitted that these letters were written under intense pressure from their family originating from [Robinson] himself.

In 2012, the victims' mother died and they went to live with their maternal grandparents, removing them from the house of [Robinson]. Once they were safely out of [Robinson's] house and control they immediately began to report to DHS caseworkers and other investigators the years of abuse they endured. Although there had been suspicions of ongoing abuse, none of the victims

felt comfortable to fully cooperate with investigators until late 2012 into 2013.

PCRA Court Opinion, 8/15/22, at 2-5 (citations omitted).

Robinson was arrested on February 28, 2013. Following his arrest, the Commonwealth turned over discovery, including video recordings of interviews of the victims conducted by the Philadelphia Children's Alliance ("PCA"). Thereafter, Robinson filed a motion to compel verbatim transcription of each victim's interview and the trial court ultimately ordered the Commonwealth to prepare the transcripts. The Commonwealth declined to do so. In response, the trial court precluded the Commonwealth from calling the victims to testify at Robinson's trial.

The Commonwealth filed a timely appeal, and certified that the trial court's order terminated or substantially handicapped its prosecution of Robinson. **See** Pa.R.A.P. 311(d). This Court reversed, holding that the trial "court abused its discretion in sanctioning the Commonwealth by precluding the victims' testimony at trial, which effectively dismissed the charges against" Robinson. **Commonwealth v. Robinson**, 122 A.2d 367, 374 (Pa. Super. 2015).[1] Thus, we remanded Robinson's case for trial.

Robinson's jury trial began on May 23, 2017 and he was convicted of involuntary deviate sexual intercourse and related charges as to C.B., and four

---

[1] The Commonwealth's appeal in **Robinson** was combined with its appeals in two other cases in which the trial court imposed the same discovery sanction.

counts of endangering the welfare of a child as to the other victims. The trial court sentenced Robinson to an aggregate term of ten to twenty-four years of incarceration and a consecutive eight-year probationary term. Robinson appealed. On December 31, 2019, this Court affirmed his judgment of sentence. *Commonwealth v. Robinson*, 225 A.3d 1195 (Pa. Super. 2019) (non-precedential decision). Robinson did not seek further review.

Robinson filed a timely *pro se* PCRA petition on August 18, 2020. The PCRA court appointed counsel, and PCRA counsel filed an amended petition on August 12, 2021. On February 24, 2022, the PCRA court issued a Rule Pa.R.Crim.P. 907 notice of its intent to dismiss Robinson's petition without a hearing. Robinson did not file a response. By order entered April 7, 2022, the PCRA court denied Robinson's petition.

Robinson filed a *pro se* notice of appeal and Rule 1925(b) concise statement of errors complained of on appeal. On February 3, 2023, the PCRA court held a hearing pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998). Despite being offered new counsel, Robinson insisted on proceeding *pro se*. Both Robinson and the PCRA court have complied with Pa.R.A.P. 1925.

Robinson raises the following four issues on appeal:

1. Did the PCRA court err as a matter of law when it denied [Robinson's] PCRA petition for trial counsel's ineffectiveness litigating a suppression hearing where, an illegally obtained post-polygraph confession was used to obtain a wrongful conviction, violating [Robinson's] 4th, 5th, 6th and 14th Amendment rights to due process?

2. Did the PCRA court err as a matter of law when it denied [Robinson's] PCRA petition, when [the] Commonwealth violated [his] United States 6th and 14th Amendment rights, as well as Article 1, Section 9 of the Pennsylvania Constitution [by] failing to give him a speedy trial within 365 [days], and [counsel's] ineffectiveness [for] failing to file a Rule 600 motion to dismiss?

3. Did the PCRA court err as a matter of law when it denied [Robinson's] PCRA petition for [counsel's] ineffective assistance for failing to thoroughly investigate [his] case, interview, present, call and cross-examine alibi witness [I.B.] and Yvonne Anderson, with [firsthand knowledge] of [Robinson's] family dynamic during pretrial and trial proceedings?

4. Did PCRA counsel render ineffective assistance for failing to properly investigate, raise, preserve and present for appellate review [Robinson's] meritorious issues presented in his *pro se* PCRA petition?

Robinson's Brief at 5 (italics added; excess capitalization deleted).

This Court's standard of review regarding an order dismissing a petition under the PCRA is to ascertain whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Barndt**, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. [**See** Pa.R.Crim.P. 909(B)(2).] To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise

abused its discretion in denying a hearing. ***Commonwealth v. Blakeney***, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

In his first three issues, Robinson raises a claim of trial counsel's ineffectiveness.[2]  To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish, by a preponderance of the evidence, that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.  ***Commonwealth v. Johnson***, 966 A.2d 523, 532 (Pa. 2009).  "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner."  ***Id.***  This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's act or omission prejudiced the petitioner.  ***Id.*** at 533.

_____

[2] In his supporting argument for these issues, Robinson at times avers that he is raising a "layered" claim of ineffectiveness.  His amended petition, however, only raised claims involving trial counsel's ineffectiveness and the trial court addressed the claims in this manner.  Thus, we limit our discussion accordingly.  We further note that the merit of any layered ineffectiveness claim depends on the PCRA petitioner establishing trial counsel's ineffectiveness.  ***See Commonwealth v. Burkett***, 5 A.3d 1260, 1270 (Pa. Super. 2010) (explaining that, when "determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel;" "[i]f that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue").

Robinson first argues that trial counsel was ineffective for failing to litigate a motion to suppress a confession he made after taking a polygraph test. According to Robinson his constitutional rights were violated because he was not given **Miranda**[3] warnings prior to his confession.

"When, as in this case, an assertion of ineffective assistance of counsel is based upon the failure to pursue a suppression motion, proof of the merit of the underlying suppression claim is necessary to establish the merit of the ineffective assistance of counsel claim." **Commonwealth v. Carelli**, 546 A.2d 1185, 1189 (Pa. Super. 1988) (citations omitted). Stated differently, although the failure to file a suppression motion under some circumstances may be evidence of ineffectiveness assistance of counsel, if the grounds underpinning that motion are without merit, counsel will not be deemed ineffective "for failing to so move." **Commonwealth v. Watley**, 153 A.3d 1034, 1044 (Pa. Super. 2016) (citations omitted). "[T]he defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been more favorable." **Id.**

Here, the PCRA court found no merit to Robinson's ineffectiveness claim. As the court explained in its Rule 907 notice:

> [Robinson] first argues that trial counsel inadequately litigated a motion to suppress the confession [he] gave after his

---

[3] **See generally**, **Miranda v. Arizona**, 384 U.S. 436 (1966).

polygraph examination. It is [Robinson's] stance that [his] **Miranda** warnings were not renewed prior to making his written confession. However, [Robinson] was not in custody when he gave his confession, nor was the confession given in response to police interrogation. Even if [Robinson] had not been advised of and expressly waived his rights under **Miranda**, there would be no basis to suppress his confession as his written statement was his own voluntary idea.

Rule 907 Notice, 2/24/22, at 2.

Our review of the record supports the PCRA court's conclusions. **See Commonwealth v. Coleman**, 204 A.3d 1003, 1007-08 (reiterating that **Miranda** warnings "are required only where a suspect is both taken into custody and subjected to interrogation"). The record establishes that Robinson came to the police station on his own and he freely volunteered the statement in which he confessed to the crime. On direct appeal, this Court concluded that "there was sufficient evidence presented at the initial suppression hearing to suggest that [Robinson] was not in custody at the time of the April 9, 2009 polygraph test to trigger a **Miranda** warning." **Robinson**, **supra**, non-precedential decision at *5. Moreover, at trial, Robinson testified that he wanted to talk to the police and had driven himself down to meet them for that purpose. **See** N.T., 5/25/17, at 28-31. Counsel cannot be deemed ineffective for failing to pursue a meritless claim. **Commonwealth v. Loner**,

836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*). Thus, Robinson's first claim of ineffectiveness fails.[4]

In his second issue, Robinson asserts that trial counsel was ineffective for failing to investigate and properly litigate his claim of a Rule 600 violation. According to Robinson, the PCRA court erred when it denied him relief on this basis because his trial did not "commence within 365 days of the criminal complaint being filed." Robinson's Brief at 28.

This Court has summarized the pertinent law regarding Rule 600 and the contrasting burdens when a petitioner raises a Rule 600 claim in a post-conviction proceeding as follows:

> At any time prior to trial, a defendant may move for dismissal of the case if Rule 600 has been violated. However, even when the defendant has not been tried within 365 days, and even when those days appear to be attributable to the Commonwealth, a Rule 600 motion shall nevertheless be denied if the Commonwealth proves that it acted with due diligence in attempting to try the defendant timely and that the circumstances occasioning the delay were beyond the Commonwealth's control.
>
> ***
>
> Ordinarily, upon the proper and timely filing of a Rule 600 motion, it would be the Commonwealth's burden to establish that due diligence was exercised in bring [a criminal defendant] to trial.

---

[4] In the argument section of his brief in support of this issue, Robinson makes additional claims regarding police misconduct in prosecuting him. **See** Robinson's Brief at 30-33. Because these claims are being raised for the first time on appeal, they are waived, and we will not consider them further. Pa.R.A.P. 302(a); **Commonwealth v. Vetter**, 149 A.3d 71, 76 (Pa. Super. 2016).

[However, when a PCRA petitioner attempts to demonstrate trial counsel was ineffective for failing to pursue a Rule 600 claim, the petitioner] bears both the burden of demonstrating that there was arguable merit to his motion, and he was prejudiced by the failure of trial counsel to pursue the motion.

***Commonwealth v. Maddrey***, 205 A.3d 323, 327-28 (Pa. Super. 2019)

(citations omitted).

Here, the PCRA court found that Robinson did not meet either burden.

The court explained:

[Robinson] argues that [trial counsel] was ineffective for failing to litigate a [Rule 600] motion to have his charges dismissed, based on a delay from [May] 13, 2013, until July 21, 2016. The procedural history of this case reflects that, besides several defense and/or joint continuances, most of the delay was the result of the Commonwealth's interlocutory appeal. The Commonwealth's interlocutory appeal was filed following a ruling from [the trial] court on March 26, 2014. The interlocutory appeal did not conclude until December 28, 2015 and was not returned to the court of common pleas until January 27, 2016. On September 11, 2014, [trial counsel] filed a motion to dismiss the charges under Rule 600, but voluntarily discontinued the motion. [Counsel] was not ineffective for failing to litigate the Rule 600 motion since a good-faith interlocutory appeal constitutes excusable delay under Rule 600.

Rule 907 Notice, 2/24/22, at 2 (excess capitalization omitted).[5]

Again, our review of the record and pertinent case law supports the

PCRA court's conclusion. ***See Commonwealth v. Risoldi***, 238 A.3d 434,

452-53 (Pa. Super. 2020), *appeal denied*, 255 A.3d 1230 (Pa. 2021)

(excluding from the Rule 600 calculation "the period during which the motion

_____

[5] Robinson's original counsel filed the Rule 600 motion and withdrew before being replaced by new counsel who represented Robinson at trial. For ease of discussion, we refer to both as "trial counsel."

to recuse and subsequent appeal were litigated [as] excusable delay under Pa.R.Crim.P. 600(C)(1)"). Moreover, while it is clear that he was not tried within the 365-day mechanical run date, Robinson made no effort in his appellate brief to demonstrate that his trial did not occur before the amended run date.[6] Thus, his second claim of ineffectiveness fails.

In his third issue, Robinson claims that trial counsel was ineffective for failing to adequately investigate or interview one of his victim's, I.B., and Yvonne Anderson and call them as defense witnesses. According to Robinson, I.B. stated in a notarized statement that she was awake the entire night that Robinson was convicted for assaulting C.B., and that C.B. never got out of bed that night. Robinson contends that I.B. "also tried notifying the Commonwealth's prosecutor," and faults trial counsel for not cross-examining I.B. "about her knowledge of the night in question." Robinson's Brief at 40-41. He further argues that trial counsel "had no reasonable basis for failing to call witness Yvonne Anderson[.]" *Id.* at 41-42.

To establish that trial counsel was ineffective for failing to investigate and/or call a witness at trial, a PCRA petitioner must demonstrate that:

_____

[6] In his reply brief, Robinson asserts that "his original PCRA petition and brief highlights with great accuracy counsel's deficient performance and the [c]ourt's failure to remedy." Robinson's Reply Brief at 8. We note that our rules do not allow for such a reference. "A party cannot incorporate the contents of another document into [his] brief on appeal, but rather must fully develop [his] position in [his] appellate brief addressed to this Court." **Commonwealth v. Dinardo**, 253 A.3d 326, *2 (Pa. Super. 2021) (non-precedential decision) (citing **Commonwealth v. Rodgers**, 605 A.2d 1228, 1239 (Pa. Super. 1992)).

(1) the witness existed; (2) the witness was available; (3) trial counsel was informed of the existence of the witness or should have known of the witness's existence; (4) the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) the absence of the testimony prejudiced appellant.

***Commonwealth v. Sneed***, 45 A.3d 1096, 1108-09 (Pa. 2012).

Here, the PCRA court found that Robinson failed to meet his burden as to either proffered witness:

[Robinson's] third claim argues that [trial] counsel was ineffective for failing to adequately investigate or interview I.B. and Yvonne Anderson as potential defense witnesses. Even assuming that either witness would have been willing and available to testify as [Robinson] claims, or that counsel knew or should have known about them, neither one's proposed testimony is of such a nature that its absence prejudiced [Robinson] to such a degree that it rendered his trial fundamentally unfair. I.B's proposed testimony does not disprove C.B.'s testimony regarding her sexual assault, nor does it allege that I.B. would have testified that she fabricated her trial testimony due to the influence of her maternal grandfather. As for Yvonne Anderson, her testimony would not exculpate [Robinson] since several witnesses at trial had already established that the victim's mother was the primary disciplinarian in the household. Yvonne Anderson's additional testimony regarding the mother would not have exonerated [Robinson].

Rule 907 Notice, 2/24/22, at 2-3.

Our review of the certified record supports the PCRA court's conclusions. Significantly, Robinson has not established that the absence of testimony from either witness prejudiced him.

I.B., one of Robinson's biological daughters and a victim of his abuse, testified for the prosecution at trial. Nonetheless, Robinson argues that trial

counsel was ineffective for failing to call her as a defense witness to testify about the night C.B. was assaulted. To support this claim, Robinson attached a 2019 notarized statement from I.B., in which she states that she remembered C.B. sleeping in her bed the night of the incident and saw her sleeping there on several occasions when she got up to go to the bathroom. This testimony would not have contradicted C.B.'s trial testimony regarding the she was awakened by Robinson and had her come downstairs where he licked her vagina.[7]

In her 2020 notarized statement, Ms. Anderson states that she was willing and available to testify regarding certain facts and that she was not interviewed by trial counsel. However, her statement only contains a series of facts regarding the history of the case of which she was aware, including: the assertion that the maternal grandmother "coerced [C.B.] to lie on [Robinson] to break up his marriage;" Robinson did not believe in physical discipline; and the girls' Mother was the sole disciplinarian in the home. This statement provides no specifics about how she obtained this knowledge. Moreover, the statement is contradicted by Robinson's own trial testimony that he did physically discipline his daughters. *See* N.T., 5/25/17, at 21-22.

---

[7] Robinson also attached a 2020 notarized statement from I.B. in which she claimed her grandparents manipulated her to into accusing him of physically abusing her. Robinson does not reference this statement in his argument supporting his ineffectiveness claim.

As such, we failed to see how Robinson was prejudiced by the absence of her testimony.

In sum, because Robinson has failed to establish his ineffectiveness claim for failing to call I.B. or Ms. Anderson as a witness in his defense at trial, his third ineffectiveness claim fails.

In his fourth and final issue, Robinson contends that PCRA counsel was ineffective for failing to raise meritorious issues that he raised in his *pro se* PCRA petition. This claim is properly before us. **See generally**, **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021). Within his argument, however, Robinson does not establish arguable merit to any specific claim that was not raised by PCRA counsel. PCRA counsel filed an amended petition in which he raised several ineffectiveness claims, including Robinson's three appellate issues, and the PCRA court rejected them when issuing its Rule 907 notice. **See** Amended PCRA Petition and Memorandum of Law, 8/12/21; Rule 907 Notice, 9/1/22.

Instead, Robinson references statements made by the PCRA court during the **Grazier** hearing held after Robinson filed a *pro se* appeal from the dismissal of his amended PCRA petition. According to Robinson, at that time, the PCRA court "verified through his own testimony and knowledge" that PCRA counsel "had a bunch of health problems, and he knew [PCRA counsel] wasn't doing things he should have been doing on [Robinson's] behalf." Robinson's Brief at 45. Robinson contends that PCRA counsel's ineffectiveness was

"attached to his health issues and inability to effectuate [Robinson's] interests." **Id.** at 46.

Our reading of the **Grazier** hearing transcript refutes Robinson's claim. The references made to the PCRA court's statements regarding PCRA counsel's health issues related to the fact that PCRA counsel may not have informed Robinson of the court's Rule 907 notice. **See** N.T., 2/2/23 at 9. The PCRA court did not "testify" or find that PCRA counsel was incapable of representing Robinson with regard to the amended petition he filed. Thus, Robinson's fourth issue fails.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/19/2023